UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BARRY MORAVEC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 3:23-cv-00011-GFVT |
| V. | ) | |
| | ) | |
| ANDREW BESHEAR, *in his official* | ) | **MEMORANDUM OPINION** |
| *Capacity as Governor* | ) | **&** |
| *of Kentucky*, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on a Motion to Dismiss filed by Governor Andrew Beshear.  [R. 6.]  Plaintiff Barry Moravec claims that Governor Beshear violated several of his rights protected by the United States Constitution by requiring him to register as a sex offender. [R. 1.]  Governor Beshear moves to dismiss, arguing that his office does not enforce Kentucky's sex offender registration statutes.  [R. 6.]  Because Mr. Moravec cannot show a specific connection between the Governor and his alleged harms, Governor Beshear's Motion **[R. 6]** is **GRANTED**.

**I**

In 2017, the Boone County Circuit Court convicted Mr. Moravec of possessing or viewing a matter portraying a sexual performance by a minor, in violation of KRS 531.335.  [R. 1 at 4.]  Mr. Moravec alleges that his crime only involved viewing online images, not making any physical, sexual contact with a minor.  *Id.*  Because of his conviction, Mr. Moravec claims

that Kentucky law designates him as having committed a "crime against a minor" rather than a "sex crime." *Id.* at 6.

Nevertheless, Kentucky law requires Mr. Moravec to register as a sex offender for life. *Id.* at 5.   Mr. Moravec believes this requirement renders him indistinguishable to the public from an offender who "committed a violent rape, produced[] and distributed child pornography, engaged in human trafficking, [or] sexually abused a minor . . . ." *Id.*  Mr. Moravec alleges that his registered status has harmed his reputation, has "limited his ability to work, travel, worship, and in general has limited his ability to pursue life, liberty, and happiness." *Id.*

Mr. Moravec has asked the Kentucky State Police to remove him from the registry several times, with his most recent denial occurring in December of 2022. *Id.*  Frustrated with the results, Mr. Moravec turned to litigation.  He filed this lawsuit in March of 2023 against Andrew Beshear, in his official capacity as Governor of the Commonwealth of Kentucky, and Daniel Cameron, its Attorney General. *Id.* at 3.  Mr. Moravec argues that Governor Beshear and Attorney General Cameron's enforcement of the Kentucky Sex Offender Registry Statute violates his rights under the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. *Id.* at 7–8.  Mr. Moravec seeks an injunction preventing the continued enforcement of the statute and a declaration that it is unconstitutional "both facially and as it may be applied" "to anyone who has not committed a 'sex crime[.]'" *Id.* at 9.

Now, Governor Beshear moves to dismiss the claims against him.  [R. 6.]  He argues that Mr. Moravec lacks standing to sue the Governor of Kentucky because the office neither compels registration with nor enforces continued compliance with the sex offender registry.  [R. 6-1 at 4.] The matter is now fully briefed and ripe for review.  [R. 11; R. 12.]

2

**II**

Article III of the United States Constitution limits federal courts to hearing "Cases" and "Controversies." U.S. Const. art. III, § 2. Under the case and controversy requirement, a federal court lacks subject matter jurisdiction over a claim unless the plaintiff has standing to assert it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing must be independently established as to each claim and defendant. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial opinion." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Each of these elements must be satisfied for jurisdiction to exist because each represents "an 'irreducible constitutional minimum.'" *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560).

Governor Beshear argues that Mr. Moravec cannot satisfy the latter two prongs. The Governor argues that the Complaint "lacks any allegation to establish an injury stemming from [his] actions." [R. 6-1 at 4.] Additionally, the Governor contends that an injunction against him would not redress Mr. Moravec's injury. *Id.*

The second element, traceability, "looks to whether the defendant's actions have a 'causal connection' to the plaintiff's injury." *Turaani*, 988 F.3d at 316 (quoting *Lujan*, 504 U.S. at 560). This element is frequently at issue when a plaintiff challenges a law by suing an official who may or may not have the authority to enforce it. 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3531.5 (3d ed. 2023). Indirect harms, meaning those resulting from the actions of a third party, cannot establish causation for standing. *Turaani*, 988 F.3d at 316 (citing *Warth v. Seldin*, 422 U.S. 490, 505 (1975) and *Simon v. E. Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 42 (1976)).  Unless the defendant's acts had a "determinative or coercive effect" on the third party, the plaintiff's "quarrel is with the third party, not the defendant."  *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

The third element, redressability, focuses on whether "the Court's remedial powers would redress the claimed injuries."  *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74 (1978).  If there is "no realistic remedy available, there is no point in deciding the merits." *Young v. Klutznick*, 652 F.2d 617, 625 n.8 (6th Cir. 1981).

Governor Beshear brings his motion under Rules 12(b)(1) and 12(b)(6).[1]  [R. 6-1 at 2.] Rule 12(b)(1) permits a litigant to contest a court's subject matter jurisdiction over a case.  Fed. R. Civ. P. 12(b)(1).  A challenge to subject matter jurisdiction may be brought at any time during a proceeding.  *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).  Motions to dismiss based on a lack of subject matter jurisdiction take two forms.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack merely questions the sufficiency of the pleadings set forth in the complaint to support jurisdiction.  *Id.*  On the other hand, a factual attack raises a factual controversy that challenges the predicate basis for jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Governor Beshear's motion represents a facial attack on subject matter jurisdiction.  He invites the Court to consider whether the facts assumed in the complaint can sustain jurisdiction as a matter of law, questioning only Mr. Moravec's legal conclusions.  [*See* R. 6-1 at 2.] Accordingly, the Court must take the allegations in Mr. Moravec's complaint as true and construe them in the light most favorable to his position.  *United States v. Richie*, 15 F.3d 592, 598 (6th

---

[1] Because the Court ultimately concludes that it lacks subject matter jurisdiction to hear the claims against Governor Beshear, it does not reach his Rule 12(b)(6) arguments.

4

Cir. 1994).  However, as the party invoking federal jurisdiction, Mr. Moravec bears the burden of establishing his standing.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Governor Beshear claims that he neither had a role in registering Mr. Moravec as a sex offender nor has a role in keeping Mr. Moravec on the list.  [R. 6-1 at 4–5.]  In response, Mr. Moravec points to the Governor's role as the Chief Magistrate of the Commonwealth's executive branch.  [R. 11 at 6 (citing Ky. Const. § 69).]  Mr. Moravec claims that he has standing "even in the absence of specific state enforcement provisions" applicable to the Governor.  *Id.*  Mr. Moravec reasons that the Governor's general authority to ensure that the Commonwealth's laws are enforced creates a connection with the enforcement of the sex offender registry statute.  *Id.*

Unfortunately, Mr. Moravec's claims are contrary to controlling law.  Absent a specific connection to the statute being challenged, the general executive powers of state governors do not establish standing to enjoin the enforcement of that law.  *See Universal Life Church*, 35 F.4th at 1031 (holding that Tennessee Governor Bill Lee's obligation to "take care that the laws be faithfully executed" did not establish standing to enjoin enforcement of a statute prohibiting ministers ordained online from performing marriages); *see also 1st Westco Corp. v. Sch. Dist.*, 6 F.3d 108, 111 (3d Cir. 1993) (finding that the Attorney General and Secretary of Education of Pennsylvania's general obligations to enforce the laws of the Commonwealth did not confer standing to challenge a statute specifically enforced by school district officials); *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980) (dismissing claim against attorney general for lack of standing where the attorney general had no authority to control the prosecutors who enforced a statute).  "[A] general allegation about the Governor's 'take care' power does not suffice to invoke federal jurisdiction."  *Universal Life Church*, 35 F.4th at 1031.  "[S]pecific,

plausible allegations about what the Governor has done, is doing, or might do to injure" the plaintiff are required. *Id.*

Mr. Moravec provides none. Instead, under *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir. 1982), Mr. Moravec claims that a substantial public interest in enforcing a challenged law obliges the Governor to use his general authority to ensure it is properly enforced. [R. 11 at 6.] Mr. Moravec's argument comes from a footnote in *Allied Artists* in which the Sixth Circuit upheld a suit against Ohio's Governor under the doctrine of *Ex Parte Young*. *See Allied Artists*, 679 F.2d at 665 n.5. The plaintiffs challenged an anti-competitive statute regarding film distribution by suing the Governor. *Id.* Despite *Ex Parte Young's* requirement that "the state officer sued have 'some connection' with the enforcement of the allegedly unconstitutional Act," the panel found the Governor's general obligation to enforce the law, combined with a statute creating equitable actions against corporations that violate those laws, to be sufficient to overcome any Eleventh Amendment issues. *Id.* Additionally, the panel noted its concerns that the plaintiff would have been unable to bring suit "without first violating" the statute. *Id.*

The concerns animating the *Allied Artists* footnote are no longer consistent with the Sixth Circuit's interpretation of *Ex Parte Young*. As Governor Beshear points out, [R. 12 at 1–2], the Circuit has since held that "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citing *1st Westco Corp*, 6 F.3d at 113). "Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court intended and held." *Id.* at 1416. Indeed, "[t]he mere fact that a governor is under

6

a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Id.* (quoting *Shell Oil Co. v. Noel*, 608 F,2d 208, 211 (1st Cir. 1979)).

Moreover, the *Allied Artists* footnote's concern regarding an inability to bring suit are not applicable to this case. As a leading treatise explains, "[t]he need to identify an official defendant with authority to enforce a challenged statute is most troubling when it defeats any opportunity for pre-enforcement review." Wright & Miller, *supra*, § 3531.5. The *Allied Artists* panel may have been willing to relax the strict requirements of *Ex Parte Young* to ensure that the plaintiffs received pre-enforcement review of a potentially unconstitutional statute. Here, there is no such need to use Governor Beshear as a placeholder for the official tasked with enforcing Kentucky's sex offender registry requirements against Mr. Moravec. As he readily admits, multiple state officials, none of whom occupy the Governor's mansion, have already enforced the registry requirement against Mr. Moravec.

Whether analyzed as a standing defect or a requirement of *Ex Parte Young*, Governor Beshear's general powers do not permit Mr. Moravec to sue him in his official capacity. Absent a specific action by the Governor that caused Mr. Moravec's alleged injury, the connection to Governor Beshear is simply too attenuated. *Universal Life Church*, 35 F.4th at 1031; *Healthcare is a Legal Duty*, 92 F.3d at 1416. For this reason, the Court must dismiss the claims against Governor Beshear.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Governor Beshear's Motion to Dismiss **[R. 6]** is **GRANTED**; and

2.  All of the Plaintiff's claims against Defendant Andrew Beshear in his Official Capacity as Governor of Kentucky are **DISMISSED** without prejudice.

This the 18th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge